IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**CHRIS R.,**

    **Plaintiff,**

v.             **Civil Action 3:23-cv-49**
               **Judge Michael J. Newman**
               **Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF
SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Chris R., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 10) and **AFFIRM** the Commissioner's decision.

**I.  BACKGROUND**

On January 6, 2021, Plaintiff protectively filed an application for DIB alleging disability beginning April 2, 2020, due to a discectomy in May 2019 with chronic pain; chronic cervical pain; bulging cervical discs; bilateral shoulder, arm, and hand pain; and bilateral hand numbness. (R. at 177–81, 215). After his application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a telephone hearing on April 26, 2022. (R. at 30–47). Plaintiff, through and with the advice of his representative, amended his alleged onset date of disability, and the time period at issue in this case to request a closed period of disability from April 2, 2020, to December 1, 2021. (R. at 35–37, 211). The ALJ denied Plaintiff's application in a written decision on June 6, 2022. (R. at 10–29). When the Appeals Council denied Plaintiff's

request for review, that denial became the Commissioner's final decision. (R. at 1–6).

Next, Plaintiff brought this action. (Doc. 1). As required, the Commissioner filed the administrative record (Doc. 8), and the parties briefed the issues. (Docs. 10, 11, 12). The matter is ripe for review.

### A. Relevant Hearing Testimony

The ALJ summarized Plaintiff's hearing testimony as follows:

> [Plaintiff] testified that he was able to return to work in 2021. Prior to that time, he experienced low back pain that radiated down his left lower extremity and eventually required surgery. He returned to work 2 months after surgery, and then began experiencing neck pain for which he underwent orthopedic evaluation and received short-term disability benefits until his condition improved.

(R. at 16).

### B. Relevant Medical Evidence

The ALJ also discussed Plaintiff's medical records and symptoms as follows:

> *** [Plaintiff] has some degree of lumbar degenerative disc disease (Exhibit 1F at 64) with a long history of low back and left lower extremity radicular pain (Exhibits 1F at 68/5F at 19), and on the failure of conservative treatment measures that included physical therapy, injections, and medications (Exhibits 1F/3F/4F/5F/ 11F), eventually underwent a left laminectomy with excision of a herniated disc at the L4-L5 level in May 2019 (Exhibits 4F at 21/5F at 24, 31). [Plaintiff] appears to have had good postoperative results, however. Three weeks status post, pain reportedly was reduced and [Plaintiff] was doing "quite well" (Exhibit 5F at 11). He had decreased range of motion of the lumbar spine, but other physical examination findings were normal on orthopedic evaluation: [Plaintiff] had normal gait. Muscle strength of the bilateral upper and lower extremities was 5/5, and deep tendon reflexes were normal. Sensation was intact to light touch (*id.*). [Plaintiff] planned to return to work thereafter, and in fact, did so in July 2019 (Exhibits 5F at 12 / 7D).
>
> Since that time, [Plaintiff] has complained of persistent low back pain (Exhibits 9F at 3/3E). He also subsequently complained of neck pain with radicular symptoms to the bilateral upper extremities, left worse than right, and parascapular pain as well as headaches in January 2020 (Exhibits 1F at 53, 61/5F at 9). Films and imaging taken of [Plaintiff]'s cervical spine have revealed mild multilevel degenerative changes most significant for right-sided disc herniation at the C6-7 level (Exhibits 8F at 7/5F at 8, 10). Nonetheless, there is no evidence that further

> surgery has been recommended (Exhibit 5F at 8, 10), and [Plaintiff] has since received comparatively little treatment for both upper back/neck and low back pain complaints (Exhibit 5F).
>
> In order to clarify the nature and severity of any existing physical impairment, [Plaintiff] was referred for a physical examination by the Division of Disability Determination (DDD). The examination was conducted by Amita Oza June 18, 2021 (Exhibit 6F). [Plaintiff] gave a history of low back pain radiating to the left lower extremity since 2016 for which he had surgery in 2019. He was able to return to work after surgery but his lumber pain worsened in December 2019 limiting his ability to lift, bend, stoop, and sit and stand/walk for more than 20 minute each. At that time, [Plaintiff] also began experiencing neck pain radiating mostly to the left shoulder and hands due to a disc bulge see on imaging. He, thereafter, quit working in April 2020. [Plaintiff]'s postoperative treatment was limited to Tylenol or ibuprofen.
>
> On physical examination, [Plaintiff] presented as uncomfortable after sitting for about 10 minutes on the table. Range of motion at the lumbar spine was restricted to 60 degrees on forward flexion and 10 degrees on extension and lateral flexion. Range of motion of the lower extremities, however, was full. Reflexes were normal. [Plaintiff] walked normally without ambulatory aids. Straight leg raise was negative to 30 degrees bilaterally. Due to muscle spasms, cervical spine range of motion also was diminished to 30 degrees on right forward flexion, rotation and extension, and 20 degrees on bilateral lateral flexion. But range of motion of the upper extremities was full with no numbness or weakness, and grip strength was 5/5 bilaterally. Other findings showed that [Plaintiff] had horizontal nystagmus but could see well. Lung were clear, and heart rate was normal.
>
> Based on her examination, Dr. Oza found [Plaintiff] has horizontal nystagmus and a history of chronic back pain status post discectomy and chronic neck pain with no evidence of cervical radiculopathy. ***

(R. at 16–18).

### C. State Agency Physicians Dr. Scott Bolz and Dr Steve McKee

In determining Plaintiff's RFC, the ALJ found the opinions of the state agency physicians, Scott Bolz, M.D., and Steve McKee, M.D., to be "persuasive," explaining:

> DDD evaluating physician Scott Bolz, M.D., assessed [Plaintiff]'s physical condition on July 30, 2021, based on the evidence of record (Exhibit 2A). The "severe" physical impairments determined to exist by Dr. Bolz were skeletal spine disorders, osteoarthrosis, and lumbar spinal stenosis. Dr. Bolz concluded that [Plaintiff] retains the functional capacity to lift as much as 20 pounds occasionally and 10 pounds frequently. [Plaintiff] can sit and stand/walk as much as 6 hours each

3

> during any given 8-hour workday. [Plaintiff]'s capacity to balance is unlimited. He can push/pull without limitation (within the specified lifting confines). [Plaintiff] can kneel and crouch frequently. He can climb ramps and stairs, stoop, and crawl occasionally. He can never climb ladders, ropes, or scaffolds. [Plaintiff] should avoid all exposure to hazards such as unprotected heights and dangerous machinery. On December 17, 2021, DDD physician, Steve McKee, M.D., affirmed these findings on reconsideration (Exhibit 4A).
>
> Both DDD reviewing physicians presented assessments of [Plaintiff]'s physical capacity and exertional capabilities that are most consistent with "light" exertion as defined for Social Security purposes. *** No compelling evidence has been presented to show that [Plaintiff] lacks the capacity to perform the basic walking, standing, sitting, and lifting requirements of light work as defined. [Plaintiff] has some decreased range of motion of the low back (Exhibit 9F at 7) and cervical portion of the spine (Exhibits 5F at 9 / 9F at 7). But Spurling's test is negative (Exhibit 1F at 61), and [Plaintiff] has good grip strength bilaterally (Exhibits 5F at 8 / 9F at 9). [Plaintiff] also has good range of motion in the bilateral upper and lower extremities, and muscle strength tests as 5/5 throughout (Exhibits 5F at 8 /9F). Straight leg raise testing is negative to 30 degrees from the floor. Gait and station are normal. [Plaintiff] remains neurologically intact (Exhibit 10F). Thus, even given [Plaintiff]'s surgical treatment history, restricting him to light work during the closed periods seems to be the most appropriate estimation of his physical capacity even in view of his widespread pain complaints, and as such, the assessments provided by the DDD reviewing physicians are persuasive.
>
> Drs. Bolz and McKee also imposed a mixture of postural limitations and safety precautions which are appropriate to include in the residual functional capacity to allow maximum consideration for the potential for undue risk of injury or exacerbation of symptoms associated with [Plaintiff]'s spinal/neck abnormalities. Accordingly, is found that [Plaintiff] can kneel and crouch frequently, but can climb ramps and stairs, stoop, and crawl no more than occasionally. He cannot climb ladders, ropes, or scaffolds. For safety considerations, [Plaintiff] should not be expected to perform work around hazards such as unprotected heights and hazardous machinery.

(R. at 19–20).

### D. The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirements through March 31, 2026, and did not engage in substantial gainful activity during the closed period of alleged disability from April 2, 2020, to December 1, 2021. (R. at 16). The ALJ determined that, during the closed period of alleged disability, Plaintiff had the following severe impairments: cervical

4

degenerative disc disease and lumbar degenerative disc disease with associated residuals of a prior laminectomy. (*Id.*). Still, the ALJ found that, during the closed period of alleged disability, Plaintiff's impairments, either singly or in combination, did not meet or medically equal a listed impairment. (R. at 18).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ concluded:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) during the period under consideration subject to the following limitations: (1) frequently kneeling and crouching; (2) occasionally climbing ramps and stairs, stooping, and crawling; (3) never climbing ladders, ropes, or scaffolds; and (4) avoid unprotected heights and hazardous machinery.

(*Id.*).

When discussing Plaintiff's subjective complaints, the ALJ determined:

> After careful consideration of the entire record, I find that [Plaintiff]'s medically determinable impairments could have reasonably been expected to cause the alleged symptoms during the relevant period; however, the extent of physical limitation alleged was largely unsubstantiated by convincing objective medical evidence or clinical findings. Allegations like his mobility being so diminished that he was unable to sit or stand/walk longer than 20 minutes each are not borne out by the record. Instead, it appears [Plaintiff] had good postoperative results and given that he has had little treatment since that time there is no evidence of significant symptoms that would have otherwise compromised [Plaintiff]'s ability to perform any and all physical activity.
>
> Therefore, reasonable restrictions in exertional capabilities (i.e., restricting [Plaintiff] to "light" exertion) and nonexertional capabilities (for example, postural limitations and safety precautions) have been included in the residual functional capacity assessment found to be applicable herein. [Plaintiff] has not presented objective medical evidence or clinical findings to establish a medically determinable physical or mental impairment that would have resulted in any greater degree of limitation. The evidence of record generally does not support the alleged loss of functioning and allegations of disability during the closed period of disability are not persuasive.

(R. at 21–22).

Relying on the vocational expert's testimony, the ALJ found that, during the closed period of alleged disability, Plaintiff was unable to perform his past relevant work as an extruder operator.

5

(R. at 22). Considering his age, education, work experience, and RFC, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed at the light exertional level, such as a ticket taker, marker, or garment sorter. (R. at 23–24). The ALJ therefore concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from April 2, 2020, through December 1, 2021. (R. at 24).

## II.  STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III.  DISCUSSION

In his Statement of Errors, Plaintiff contends that the ALJ erred in evaluating his pain complaints and symptom severity under Social Security Ruling (SSR) 16-3p. (Doc. 10 at 5–8). When a Plaintiff alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating those symptoms. *See* 20 C.F.R. § 404.1529 Social Security Ruling (SSR) 16-3p, 2016 WL 1119029, at *3 (March 16, 2016).[1]

---

[1] Soc. Sec. R. (SSR) 16-3p, 2016 WL 1119029, which "provides guidance about how [the SSA] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms," superseded SSR 96-7p and became applicable

6

First, the ALJ must determine whether the individual has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged. *See also* 20 C.F.R. § 404.1529(c)(3). Second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence according to seven factors. 20 C.F.R. § 404.1529(c)(3). Relevant here are the following: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; and treatment, other than medication, received for relief of pain or other symptoms. *Id.* In performing this assessment, the ALJ is not required to analyze all seven factors but must still show that he considered the relevant evidence. *Kimberly C. v. Comm'r of Soc. Sec.*, No. 1:22-CV-637, 2023 WL 6807955, at *3 (S.D. Ohio Oct. 16, 2023) (citing *Roach v. Comm'r Soc. Sec.*, No. 1:20-CV-01853, 2021 WL 4553128, at *10–11 (N.D. Ohio Oct. 5, 2021)).

Although the ALJ's assessment of an individual's subjective complaints and limitations must be supported by substantial evidence and be based on a consideration of the entire record, *Rogers*, 486 F.3d at 247 (internal quotation omitted), it remains the province of the ALJ and not the reviewing court to assess the consistency of Plaintiff's symptom reports with the record as a whole. *See id.; Molly M. v. Comm'r of Soc. Sec.*, No. 3:20-CV-274, 2022 WL 336412, at *5 (S.D. Ohio Feb. 4, 2022) ("[I]t is not in this Court's province to reweigh the evidence or decide questions of credibility."). Furthermore, when an ALJ finds contradictions between medical evidence and a claimant's subjective reports, "discounting credibility to a certain degree is appropriate." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Therefore, "absent a compelling

---

to decisions issued on or after March 28, 2016. *See* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) (clarifying applicable date of SSR 16-3p).

reason," an ALJ's credibility and consistency determination will not be disturbed. *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

Here, the ALJ found that Plaintiff's symptoms did not limit Plaintiff's capacity to work as he alleged, writing that "the extent of physical limitation alleged was largely unsubstantiated by convincing objective medical evidence or clinical findings." (R. at 21–22). Plaintiff asserts that the ALJ improperly considered his symptom severity but does not identify any specific limitations that the ALJ should have adopted in his RFC. (Doc. 10 at 5–8). Instead, Plaintiff argues generally that Plaintiff's subjective reports of his symptoms suggest that he should be more limited than the RFC crafted by the ALJ. (*Id.*) The Undersigned disagrees.

Contrary to Plaintiff's arguments, the ALJ appropriately considered the factors outlined in 20 C.F.R. § 404.1529(c)(3) when crafting Plaintiff's RFC. For example, the ALJ considered the treatments Plaintiff did and did not receive during the relevant time period against Plaintiff's descriptions of his symptoms. (R. at 21–22); *see* 20 C.F.R. § 404.1529(c)(3)(iv), (v). To start, the ALJ discussed the failure of conservative treatment methods to alleviate Plaintiff's symptoms. (R. at 16, citing R. at 290, 292–96, 353–62, 370–400, 406–07, 421–35, 444–45). But then the ALJ highlighted that after his left laminectomy surgery in May 2019, Plaintiff had "good postoperative results," showing he was responsive to this treatment. (R. at 17; *see e.g.*, R. at 383–84, 425–26). In addition, the ALJ discussed that Plaintiff even felt "quite well" three weeks after this surgery, had reduced pain, and returned to work. (R. at 16–17, citing R. at 196–99, 383, 425–26). The ALJ noted that since the surgery, Plaintiff has received little treatment, suggesting that "there is no evidence of significant symptoms that would have otherwise compromised [Plaintiff's] ability to perform any and all physical activity." (R. at 22; citing 422, 424 (showing little treatment after

8

Plaintiff's surgery for his upper back, lower back, and neck); *see also* R. at 446–50, 451–62, 463–72, 473–82, 483–502, 503–09 (same)).

The ALJ further discussed how Plaintiff's description of the "location, duration, frequency, and intensity" of his symptoms was at times inconsistent with the medical evidence provided. (R. at 16–17); 20 C.F.R. § 404.1529(c)(3)(ii). For instance, Plaintiff "complained of persistent low back pain," neck pain that radiated into his upper extremities, as well as "parascapular pain" and "headaches." (R. at 17, citing R. at 222–29, 326, 423, 475). Yet, as the ALJ noted, physical examinations did not support the reported severity of his symptoms. (R. at 17, citing R. at 423 (finding that despite Plaintiff's complaints of neck, arm, and parascapular pain, his reflexes were normal, he had 5/5 strength in his lower extremities, and no weakness with his left grip strength), 475–76 (showing that Plaintiff had full range of motion in his upper extremities, strong bilateral grip strength, full range of motion in his hips, knees, and ankles, and all limbs at 5/5 strength).

The ALJ also explained that "[a]llegations like [Plaintiff's] mobility being so diminished that he was unable to sit or stand/walk longer than 20 minutes each are not borne out by the record." (R. at 16–17); *see* 20 C.F.R. § 404.1529(c)(3)(i) (instructing an ALJ to consider a claimant's daily activities when evaluating symptom severity). Indeed, the record shows evidence that Plaintiff's gait was normal at times and that walking and standing sometimes helped Plaintiff's pain. (*See e.g.*, R. at 330, 333–34, 396, 493, 501). The ALJ further noted that nothing in the record suggests that Plaintiff needed a cane, walker, wheelchair, or other mobility device to assist him with walking. (R. at 18; *see* R. at 475). Finally, the ALJ discussed that Plaintiff returned to work for some time after his 2019 surgery and did not stop working again until April 2020. (R. at 17, citing R. at 475). These inconsistencies, combined with Plaintiff's ability to work some until April 2020, provide support for the ALJ's decision. *See Katherine K. v. Comm'r of Soc. Sec.*, No. 1:20-cv-

9

563, 2022 WL 71628, at *11 (S.D. Ohio Jan. 7, 2022) (finding that the claimant's ability to work part-time was substantial evidence supporting the ALJ's conclusions about the claimant's symptom severity).

Plaintiff also argues that the ALJ's credibility determination is inconsistent with his finding that the opinions of state agency physicians Drs. Bolz and McKee are persuasive, because the doctors found Plaintiff's symptom allegations to be "[f]ully consistent" with the medical record. (Doc. 10 at 6, citing R. at 20; *see also* R. at 51–52, 59–60). Even though the doctors found Plaintiff's descriptions of his symptoms to be consistent with the medical evidence, they also found Plaintiff was not disabled and capable of light work. (R. at 54, 62). More still, the ALJ fully incorporated Dr. Bolz's and Dr. McKee's recommendations into Plaintiff's RFC. Consistent with the evaluating physicians' recommendations, the ALJ found Plaintiff capable of light work; of kneeling and crouching frequently; and of occasionally climbing stairs and ramps, stooping, and crawling. (R. at 18, 20; *see also* R. at 53, 61). As recommended by Dr. Bolz and Dr. McKee, the ALJ further limited Plaintiff to never climbing ladders, ropes, and scaffolds, and avoiding all exposure to hazards, including dangerous machinery and unprotected heights. (R. at 18; *see* R. at 53, 61).

The ALJ then found that there was "no compelling evidence" showing Plaintiff could not perform light work as determined by the evaluating physicians. (R. at 19–20). In concluding so, the ALJ cited objective medical evidence supporting Plaintiff's abilities to do "basic walking, standing, sitting, and lifting." (R. at 20). While the ALJ pointed to medical examinations that show a decreased range of motion in Plaintiff's lower back and cervical portions of the spine (R. at 20, citing R. at 423, 479), the ALJ also stated that Plaintiff's "Spurling's test" was negative, he had "good" bilateral grip strength, and he had a good range of motion and 5/5 muscle strength in

10

his upper and lower extremities. (R. at 20, citing 326, 422, 477–481). This objective medical evidence contradicts Plaintiff's subjective reports of his symptoms and was appropriately considered by the ALJ when considering the consistency of Plaintiff's statements about his pain. *See Walters,* 127 F.3d at 531.

While the Plaintiff points to evidence in the record that may have supported a more limited RFC, "[i]t is well established… that an ALJ is not required to 'discuss every piece of evidence in the record to substantiate [his] decision.'" *Spurlock v. Comm'r of Soc. Sec.*, No. 2:20-cv-3981, 2022 WL 23683, at *10 (S.D. Ohio Jan. 3, 2022) (quoting *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016). It is not this Court's role to reweigh the evidence. *Haun v. Comm'r of Soc. Sec.*, 107 F. App'x 462, 465 (6th Cir. 2004). Here, the ALJ's decision shows he considered the record as a whole, and substantial evidence supports his decision. *Id.*

## IV.   CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors (Doc. 10) and **AFFIRM** the Commissioner's decision.

## V.   PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further

11

evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo* and operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

       IT IS SO ORDERED.

Date:  November 21, 2023                      /s/ Kimberly A. Jolson
                                                            KIMBERLY A. JOLSON
                                                            UNITED STATES MAGISTRATE JUDGE